Council that are going to argue, if you could approach and tell us who you are, who you represent. Good morning. My name is Jessica Ware and I represent the defendant, Mr. James Short. Good morning. My name is Lisa Ambrose. I'm Assistant State's Attorney appearing on behalf of the people of the state of Illinois. All right. You're a pair of KG veterans, so you know the rule, 15 minutes per side, save some time for rebuttal. And importantly for us with hearing issues, the microphone is for recording that amplification, so please keep your voice up. Okay? Thank you. May it please the Court. My name is Jessica Ware on behalf of the Office of the State Appellate Defender, and I represent the appellant, Mr. James Short. Your Honors, today I would like to argue Issue 1 from my briefs regarding the trial court's failure to admit defendant's prior consistent statement. Your Honors, our courts have long held that a prior consistent statement is admissible to rebut an inference that the witness's trial testimony is a recent fabrication. In other words, a prior consistent statement is admissible to show that the witness told the same story before the time of the alleged fabrication. This is to prevent the jury from being misled by a false impression that the witness failed to come forward with a version of the story until the time of trial. Where in the record, Ms. Ware, do you find the suggestion of a recent fabrication? Your Honors, the State inferred that Mr. Short was recently fabricating his testimony during its cross-examination of the defendant. Now, the case law says the cross-examination asked him about the statement that he gave at the police station, which didn't make any mention of self-defense. Other than impeaching him by omission, where is the suggestion in the record of recent fabrication? Because the State elicited from the defendant on cross-examination, you had the opportunity to make changes to your statement, correct? You had the opportunity to read over it, correct? You weren't in a jail cell when you were giving the statement. And all of these things were inferring that if he was acting in self-defense, it would have been in the statement. But other than impeaching him by the omission, there has to be more, I think, under the case law than simply impeachment by omission. Let me read to you. People v. Ruback says, generally, an inference that a witness's in-court testimony is of recent fabrication arises from negative evidence that the witness did not speak of the matter at a time when it would have been natural for him to do so. And so that's what we have in this case. The negative inference. The State is bringing the negative inference that he had the opportunity to claim self-defense. You had the opportunity to make these changes. You had the opportunity to add anything in there that you wanted, and you did not. So that's the inference that the State is making. And if there was any ambiguity as to what the State's intent was in inferring that, they made it abundantly clear in their closing statement by arguing to the jury this. They argued, Schwartz was telling the State's attorney what happened. And this whole thing about self-defense is nonsense. It's something the defendant has to say now because he is sitting right there. So they're making it clear that the defendant is saying this self-defense claim for the first time now that he's sitting right there, that he's never told this story before, when, in fact, the State knew that that was not true. Detective Simms' police report indicated clearly that the defendant said he was acting in self-defense, that a bunch of guys were surrounding the car at the time of the attack, and that Felters was repeatedly punching Dawkins. And all of these things were in the report. Now, at the time of trial, the State did not dispute that those things were in the report, that those prior consistent statements alleging self-defense were in the report. But the jury wasn't allowed to hear that because the judge did not allow the prior consistent statement. Let's say we agree with you, for the sake of argument here this morning, that that was improperly allowed, that negative inference. Where's the harm? I mean, your client, the defendant testified and basically gave up the case, and he was found guilty. I don't see where you can say that this was even remotely close evidence. Well, we know that this was a close case here because this was a credibility contest. We have the defense witness's version really substantiating the defendant's testimony that this was self-defense. Then we have the State's witness's version that substantiates the handwritten statement that there was no harm. Gun versus a fist? Is that the closeness of the evidence? Well, we know the evidence was close here, Your Honor, because the jury deliberated into the second day over this case. They acquitted him of the first. But why can we speculate the fact that they ñ you're speculating there. I mean, that's pure speculation. We have no idea, do we? And the law says we shouldn't speculate about the length of a trial, does it? Well, I'd like to say that it's the State's burden to prove that this error is harmless. But on these kind of facts where you have a credibility contest, where you have the jury of ñ They acquitted him of the more serious charge. I mean, you know, it goes along with the second issue in your case that you're saying that he was prejudiced by the gang membership stuff coming up in Voir D'Ire. This jury was so prejudiced they acquitted him of attempt first-degree murder? Well, we don't know if this statement would have came in. If this prior consistent statement ñ put it like this. The defendant's testimony was infirm, okay? The State's attorney said he did not claim self-defense. And the defendant's saying, yes, I did. Now, his whole defense theory hinged on whether or not the jury was going to believe his trial testimony, that he was acting in self-defense. Now, that prior consistent statement that he claimed self-defense from the very beginning would have rehabilitated his trial testimony. But as it was, the jury was left with an inference that this whole self-defense thing is brand new. Does it matter that the police report that you're referring to is not in the record? No, it doesn't, because defense counsel made a very clear proffer on the record. And I'll quote exactly what the report says based on defense counsel's proffer, which the prosecutor did not disagree with. The court didn't disagree with it. No one. It says, and my proffer to you, to your honor, is that in Detective Sims' police report, it specifically says, and then it has quotes, short stated that he shot the victim in self-defense. That guy kept hitting Dawkins. That he believed the guy was trying to knock him out so that he could take his jewelry. And that there were a bunch of guys around the vehicle at the time. That Lester and Dawkins are like his family, and he felt as if he were being attacked. Now, at the time when defense counsel read this into the record, there was no dispute that these statements were in Detective Sims' report. These statements mirror the defendant's trial testimony. But the jury had no way of knowing that what the state did here was mislead them into thinking that the defendant has never claimed self-defense before. And that's what made this issue even more egregious here, is because the state knew that the defendant had claimed self-defense from the very beginning. But they exploited the trial court's ruling because they knew that the jury wasn't going to hear those statements. And they argued to the jury that those statements were never made. That they never existed. That the defendant has never claimed self-defense before. And so he's sitting right here in trial because he has to. That was totally unfair. It prejudiced the defendant's case. I don't know. More than most, it seems like this defendant got a really, really good job done by his counsel at trial. And was acquitted of this more serious charge. And I just don't see the prejudice here. Well, the prejudice here, Your Honor, is clear when we have a case that's a credibility contest. That's what the case law says. When the case is an issue of credibility, are you going to believe the state's witnesses or the defense's witnesses? The defense put on an affirmative defense. He brought witnesses in to support it. And that affirmative defense was supported by a statement that he gave to the police that was never brought before the jury. But how does, even if we accept that when he first spoke to Detective Sims, he mentioned self-defense. It's undisputed that it's not in his written statement. And in order to accept this theory that Mr. Short has, that all along I maintained that I acted in self-defense, the jury would have to have concluded that the assistant state's attorney deliberately left this out of his written statement. And there is no evidence to that effect, is there? Well, that's why it was important to call Detective Sims. Because Detective Sims could have rehabilitated the defendant's testimony that, yes, I did make these claims. And Detective Sims was there during the handwritten. But if that doesn't go to the issue that the jury then would have had to accept with absolutely no evidence to support it, that, in fact, Mr. Short told the assistant state's attorney, I acted in self-defense, and she deliberately left it out of his written statement. And he didn't say anything when he read over it, said, I'm signing. He didn't say anything. Well, the defendant testified that he did. And that would have been corroborated by Detective Sims' report. Because Detective Sims said that the defendant did say it. He was at the police station, interviewed the defendant before the defendant even gave the hand. I mean, there's nothing in the record to indicate it was before. There's no time stamp or anything. There's nothing that would indicate he couldn't have been interviewed after he talked to ASA. Well, the defendant's testimony was that he was interviewed by Detective Sims before he gave the statement. That's what we have on the record. And the citation is in my reply brief to where the defendant says that. And the state never disputed that when this proffer was being made before the court about Detective Sims' report. The state never said, hey, that report was made after he gave the handwritten statement. There was no dispute about this at trial. Are you going to address your second issue? If you would like me to address the second issue. Great. Okay. Thank you. Your Honors, James Short was deprived of his right to be tried by a fair and impartial jury. Our courts have long held that there is a strong prejudice in gang evidence. The prejudice is so strong that gang evidence is presumptively inadmissible. So in the instant case, in an attempt to keep the jury from hearing any evidence that the defendant was allegedly a gang member, defense counsel made a two-part motion asking the court to allow the defendant to either plead guilty or have a bench trial. Is that proper procedure, the eeny, meeny, miny, moe kind of thing, either or? Can he ask for an either or? He's giving the court alternative requests. If you don't do this, then do this. He's making it known that he's willing to do anything to keep this evidence from the jury. And so the trial judge said, though, I want to make sure I understand what you mean by concede. And defense counsel made clear what he meant by concede was I'd like you to decide it, judge, not that I want to plead guilty. I'd like you to decide the gang issue charge, and we'll let the jury decide the other charge. Well, no, the defense counsel said that his preference was to allow. His preference was he wanted, he's asking the judge to bifurcate. That's his preference, right? Correct, but. So that's what he's asking the judge to do. He's not, you know, that was the first time he asked for that because the first thing that happened was a motion eliminating. In the motion eliminating, all he wanted to do was bar that gang evidence at trial, and that was turned down. And then the court said, to the effect that I don't remember you making this motion before when it was brought up the second time. And, in fact, it wasn't because this was the first time he asked for bifurcation. That wasn't a motion to eliminate. So now he's having bifurcation, and it's denied. Okay, well, I'm going to reach. I mean, this is something that's not something for us to be concerned about. Well, I'm going to read to you defense counsel's exact words when he made the motion. We've read them. We've read them. He says he'd be willing to concede on the charge, to take it to bench on that charge, and even, and then he's cut off. And the defense, and the court is saying, well, what do you mean by concede? Do you mean take it to a bench? And he's like, well, that's my preference. You know, that's the first remedy that we're asking for here. But even if you believe. So then he denied it. And then what happened? Well, even if you believe that defense counsel didn't properly clarify the motion, then defense counsel was ineffective because we know that after voir dire has taken place, after the jury has already inundated with the fact that the defendant is an alleged gang member, the defendant is an alleged gang member, the defendant is an alleged gang member, after that's already, the cat's already out the bag, defense counsel comes forward and says, hey, can you reconsider my motion, and then. Yes, reconsider half of my motion. Well, no. The defense counsel said, can you reconsider my motion, and then the court said, I don't remember your motion as involving. No, no, no, no. Now, that's where I really have a problem with your brief. At page 30, you say the court granted the motion, and I'm quoting here, quote, stating that it did not recall the earlier motion. That's not what he said. He. What the trial judge said is I recall your motion, and then the judge recalled exactly correctly what counsel's motion was, the either or, and that he preferred to have it as a bench, and that was denied. So the judge recalled it correctly, and your verbiage here I think is quite misleading. I'm sorry. Are you saying that the court recalled the motion as involving two alternative remedies? I'm saying that the court recalled the motion exactly correctly in the transcript that we read, and when you say here that the court said that it did not recall the motion, I just don't think that's accurate. No, no, no. What I'm saying is when counsel asked the court to reconsider the motion to plead guilty, the court says I don't believe your motion involved a request to plead guilty. And it didn't, because he said that he wanted to have a bench on it, and that was denied. Right. And so I'm saying if you believe that, that the judge is recalling it correct, then counsel's ineffective, because what counsel meant to do was to ask for either or, and that's what counsel says. Counsel says I believe I did ask to plead guilty. I believe I did do that. And so wouldn't it stand to reason that the first time this was brought up, defense counsel knew if his intent was to plead guilty that the judge wasn't understanding him. And he didn't say, no, no, no, when I say concede, I mean my client would like to plead guilty. He didn't do that. That's the essence of my ineffective assistance of counsel argument. Counsel did not do that. Counsel did not clarify when he had the opportunity. He was trying to have it both ways. And he was representing his client, and this defendant got a really good job of representation. He was acquitted of attempt first-degree murder. I don't know how you can claim anything else. It seems like the lawyer did a good job, the jury listened to everything, the jury heard the admonition from the trial court about the gang evidence, then they were told that you're not going to hear it, and the jury acquitted him and found him guilty of something that he basically testified that he did. Your Honors, we can't overlook the fact that defense counsel himself raises his own ineffectiveness in the post-trial motion. He says the way that he went about handling gang evidence was ineffective. And the judge said that's not the case. Well, the judge did. The judge said, recall, the whole thing, we've gone all over this before, and I deny your motion. There was not much discussion, I understand. Correct, but the judge did not specifically rule on the ineffectiveness claim. That's something that had never been litigated. Counsel had never before said I'm ineffective. So the judge, when he just kind of dismissed the motion, he never specifically addressed the ineffectiveness claim, which leads us to argument three, that counsel was operating under a conflict, even at the motion for a new trial hearing, because he was forced to argue his own ineffectiveness. I mean, here we have ‑‑ I think both trial and appellate counsel have been pretty effective, but why don't you wrap up your argument here today. Sure. Your Honors, we ask that this Court will reverse and remand this cause for a new trial pursuant to argument one, or pursuant to argument three, remand the trial, I'm sorry, remand for a new motion for a new trial hearing. Thank you. Thank you very much. May it please the Court. My name is Lee-San Pugliese. I'm an Assistant State's Attorney appearing on behalf of the people of the State of Illinois. The defendant's prior statement is inadmissible because there was not an allegation of recent fabrication and the defendant had a motive to testify falsely, or a motive to fabricate at the time his prior statement was made to Detective Sims. With regard to the allegation or inference of recent fabrication, as Your Honor pointed out, there were no questions of the defendant regarding the fact that he didn't state there was self-defense in his handwritten statement with the Assistant State's Attorney. In fact, the defendant himself, during a direct examination, made an allegation that the State's Attorney didn't include some of these comments that he testified to at trial, that it was a self-defense situation and that there was an object. His attorney brought that up. What about the State's closing argument where it says the only reason he's coming up with self-defense is that he's sitting right here? Well, as defendant was impeached by this prior statement to the Assistant State's Attorney, this was a reasonable inference in closing argument to argue that he was impeached and he wasn't consistent in his statement. But isn't there a problem when the State is in possession of a police report where the detective writes down, this is what the defendant claims, and then knowing that that report isn't going to come in after all the evidence is in, then the State then says, he's making it up. Seems a little unfair. Well, as I said, I believe it was a reasonable inference based on the evidence. And even if this Court would find that there was an allegation of recent fabrication, the defendant's prior statement isn't admissible for the fact that he did have a motive to testify or fabricate his testimony when he talked to Detective Sims. Wait a minute. That doesn't make sense. When he talked to Detective Sims. Yes. That's when he said the concept of self-defense. Correct. Correct. Then, as counsel just mentioned, after that, he had the interview. For whatever reason, it's not in the, it wasn't asked or who knows what. Right. I don't know. But it's a prior statement to the hand signed statement by the ASA, which is consistent with his trial testimony. And in that order, when did it make sense then for, under the law, that Sims should have been recalled so he could testify to that? Your Honor, the best case I think to look at and the most instructive case in this matter is Peoples v. Grissett, where we have a very similar situation as we have here. And in that case, the Court held that a prior consistent statement is inadmissible to rebut a charge of recent fabrication, only if the motive to fabricate did not exist at the time of the prior statement. In our case, we're looking at the defendant's prior statement made to Detective Sims after he was already in custody after the shooting and after a gun was recovered from his vehicle. It's clear the defendant had a motive to fabricate testimony in support of his claim of innocence at that point. And according to Peoples v. Grissett, because he had that motive, his prior statement is inadmissible. But it's not being admitted for anything substantive. Correct. It's just being written to show that his trial testimony is consistent with what he had told the detective. It is, but because the defendant had a motive and we're considering motive under Peoples v. Grissett. So if he tells the truth to the detective, that's a motive? Well, Your Honor, and the reason for it to consider motive in this situation is because with a witness, state witness perhaps, the defendant has an underlying motive once he's charged with the crime that you cannot separate out of the equation when you're considering his prior statements. Generally, a defendant's self-serving statements are inadmissible and they're inadmissible because they're inherently unreliable or incompetent. And the reasoning for that is a defendant has an inherent motive to testify falsely or fabricate testimony in support of his innocence. But this was something that was brought out because of the Peoples examination. This wasn't something that he brought out. This was for him to call back Detective Sims. Right. So he wasn't trying to raise it himself. Well, in fact, Your Honor, the defense on the assistant state's attorney's handwriting statement was brought out in the Peoples case. When the defendant testified, he testified differently, that there was an object that he saw in the defendant's hand that was not brought out in the assistant state's attorney's testimony. The defense attorney then asked the defendant, well, did you, and brought out through the cross-examination whether or not this was in the assistant state's attorney's statement. And the defendant then on his own would say, no, I told her, I put this in there, she didn't include it. So he brought that whole omission up. The state didn't cross him on that. All the state crossed him on was in response to those questions about certain things not being included was the fact that, okay, well, you're saying this wasn't included in there, but you did have a chance to read the statement and you did have a chance to sign it. Just to clarify, it's a process by which these handwritten statements are made for the jury that if the assistant state's attorney did not put something in there, he had an opportunity to change that. So according to Peoples v. Reset, Peoples maintained that this prior statement where a defendant had a motive when he was talking to the detective was inadmissible. Even assuming there is error, which Peoples maintained there was not, any error would be harmless in light of the overwhelming evidence in this case of defendant's guilt. This is not a close case as alleged by the defendant. Defendant is the only person at trial who testified that he saw an object or some kind of weapon in the victim's hand when he's claiming self-defense. The victim did not testify, obviously, that he did not have an object. Well, Dawkins testified that he was being hit with brass knuckles. Dawkins testified he did not see who was hitting him. He said he was attacked from the window. He assumed it was the victim because he was shot. All he said is he felt something on his face, but he did not testify that he saw any object in the victim's hand. And in fact, going beyond just the testimony to the victim and the defendant, there was no object or weapon recovered from the scene. The victim was shot right outside his car. He made his way just a short way to where the party was, and he landed on the driveway. It was a short distance. This weapon would have been recovered when the police searched, and it was not. There's nothing to back up the defendant's side of the story, and the jury found in favor of the credibility of the state's witnesses. I'd like to address a second issue. The trial court promptly denied defendant's motion to dismiss the veneer after he pled guilty to the gang-related charge for three reasons. The defendant asked for the now-complained-of veneer question. He agreed and said, yes, I would want this question asked of the jury because there's a gang charge pending. Only after he decided to plead guilty after the jury was picked, he asked to dismiss the jury, the jury he had just accepted as fair and impartial. The defendant is not entitled to a do-over and get a new jury simply because he decided to plead on one of the charges that no longer is pending before the court. He got what he wanted, and now he's complaining that he wants a do-over. Secondly, defendant did receive a fair and impartial jury. Defense counsel willingly accepted, without complaint, every one of those jurors. Each juror agreed when asked if they could be fair and impartial considering any gang evidence. They all agreed, yes, we can be fair and impartial, and there's no proof to the contrary that these jurors were not fair and impartial. Does the fact that each member of the veneer was asked the same question make this different from cases where a judge questioned the veneer as a whole? I don't believe it does, Your Honor. I believe the jury was asked this question, whether they heard it once or several times, they all agreed they could be fair and impartial when asked that question. And moreover, Judge, there was no, even though they heard this question, the judge instructed them after the defendant pled guilty that they would no longer be hearing any gang evidence and that they will not be coming in. He instructed them and admonished them that you should only consider the testimony of the witnesses and what is before this court. So they were properly instructed. And most of all, there was not one indicia of gang evidence introduced at trial. They heard nothing. This whole argument is based on one veneer question to the jury, the jury that the defendant freely and willingly accepted. For those reasons and for those enumerated in my brief, the people maintain this court should affirm defendant's convictions. Thank you very much. Thank you. Just a couple points about Issue 1 and Issue 2. Your Honors, the state asked this court to follow the rule in People v. Grissett regarding prior consistent statements, but I argue that this court will follow its most recent precedent, appellate court's most recent precedent, which does not follow the rule in Grissett. Just as recently as two months ago, this panel decided People v. Dupree under the separate exceptions rule, which means that a prior consistent statement is admissible to rebut a charge of recent fabrication as long as the statement is made before the alleged fabrication. They don't have to also prove that the statement was made before a motive to lie, and that's the line of cases that the appellate court has followed most recently, and we would ask this court to follow that as well. In regards to Issue 2, Your Honors, the prejudice was not only the fact that the jury was inundated with reminders that the defendant was a gang member, but also because of the unexplained reason why those two charges were removed from their purview, which could have led the jury to speculate that the defendant was convicted of those offenses. Maybe it speculated that the State didn't have the proof and they dismissed the charges. We don't know. But it would have led the jury to speculate either way, and that is prejudicial because even if the jury would have speculated that the defendant was acquitted of those offenses, the jury could have believed then that, well, since he's been acquitted on these offenses, we need to find him guilty of something because he's responsible for this. That's assuming a jury completely disregards a trial judge's instructions. Well, I mean, the courts say that gang evidence is just inherently prejudicial. Whether the jury says they can be fair or not, people don't like gangs. And we have a jury here that even though they said they could be fair, they were inundated with reminders that the defendant was an alleged gang member. But your client accepted this jury after you claimed they were inundated. He believed, without objection, that this jury could be fair. So I don't understand how they become unfair based on evidence they didn't hear. Correct. They did not hear any gang evidence, but it was out there. The bell couldn't be unrung here. We can say that the jury was fair because they said they could be fair, but they heard it. The defendant rang the bell, okay? The defendant could have pled guilty before voir dire, could have made the request clear to the trial court, and none of this would have been an issue. It was an issue because the trial lawyer was playing both sides with the trial court. And if that is the case, then I'd ask this Court to find that counsel was ineffective for that, for allowing the jury to be apprised of all of this and then plead guilty. I'd argue that defense counsel was ineffective for that maneuver. For these reasons and the reasons stated in our briefs, we'd ask that this Court would reverse and remand this cause for a new trial. Thank you. Okay. Thank you for the arguments and the briefs, both well done. We will take the matter under advisement and issue a ruling directly. We are adjourned. We have another case at 10.30, I believe.